IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-cv-62170

LYNNETTE ENSIGN,

    Plaintiff,

v.

BANK OF AMERICA, N.A.

    Defendant.

_____/

## COMPLAINT

Plaintiff, LYNNETTE ENSIGN, by and through her undersigned counsel, hereby sues Defendant, BANK OF AMERICA, N.A. ("BANA"), and alleges:

### JURISDICTION AND VENUE

1. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under 15 U.S.C. §§ 1693 et seq. (the "Electronic Funds Transfer Act" or "EFTA") and 12 CFR § 205 et seq. ("Regulation E").

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(B) and rule 3.1 of the Local Rules of the United States District Court for the Southern District of Florida in that all events giving rise to the lawsuit occurred in Broward County, Florida, Plaintiff resides in Broward County, and Defendant transacts business in Broward County.

### PARTIES

3. Plaintiff, LYNNETTE ENSIGN, is a resident of Broward County, Florida, is over the age of 18, and is otherwise *sui juris*.

4. Defendant, BANK OF AMERICA, N.A. ("BANA"), is a national banking institution that is registered to do business in the State of Florida and is engaged in business

1

throughout the State of Florida, including the Southern District of Florida, and more specifically, Broward County.

## GENERAL ALLEGATIONS

5. Plaintiff entered into a contract with BANA to provide banking and checking account services for Plaintiff.

6. During all relevant times, BANA provided checking account services for Account number ending in 3271 and the associated debit cards ending in 8675 and 1236.[1]

7. The aforementioned account was opened over fifteen years ago in Broward County, Florida, and maintained at all times mentioned herein in the State of Florida.

8. BANA had an obligation to protect and preserve the money deposited in said account and to only transfer, release, or withdraw funds deposited therein pursuant to the authorization and direction of Plaintiff.

9. Beginning on April 27, 2020, BANA permitted, on numerous occasions, the unauthorized transfer, release, and/or withdrawal of funds from Plaintiff's account. The unauthorized transactions are listed on the spreadsheet attached as Exhibit "A" hereto.

10. The aforementioned unauthorized transfers were done as electronic transfers for the payment of services by various vendors, merchants, and/or payees for debts owed by numerous individuals who had no interest in Plaintiff's account.

11. On June 12, 2020, Plaintiff first noticed the unauthorized transactions and immediately contacted BANA by telephone. Plaintiff spent over two hours on the phone with BANA going over the account statements and filing the claim.

---

[1] Full account numbers will be provided to BANA upon request under separate cover to maintain Plaintiff's privacy.

12. On that same day, Plaintiff requested that her account be frozen so that no more money could be taken out without her authorization, however, BANA did not adhere to this request and did not freeze the account until June 16, 2020. Because BANA did not freeze the account as directed on June 12, several unauthorized transactions were made on June 15, totaling $897.00.

13. Plaintiff made several calls to BANA between June 12 and June 16, 2020 regarding the unauthorized transactions. Each time she called, Plaintiff was advised that there was no claim filed. Plaintiff ended up filing the claim at least five times by phone and was given eight different claim numbers.

14. On or about July 30, 2020, BANA advised Plaintiff by phone that her claims were denied.

15. Plaintiff never received anything in writing from BANA regarding any investigation into the unauthorized transactions or anything in writing denying Plaintiff's claims.

16. All conditions precedent to the filing of this action have been met or have been waived.

## COUNT I
### Violation of 15 U.S.C. §§ 1693 et seq. (the "Electronic Funds Transfer Act" or "EFTA") and 12 CFR § 205 et seq. ("Regulation E")

17. Plaintiff re-alleges and re-asserts the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

18. The unauthorized transfers from Plaintiff's account were made by "electronic funds transfers" as such term is defined under the EFTA.

19. The EFTA imposes civil liability on any bank that fails to comply with the provisions of the EFTA.

3

20. 12 CFR § 205 specifically provides that the account holder shall have no liability for any unauthorized transfer, and any subsequent unauthorized transfer that could have been prevented, if the account holder's bank receives actual or constructive notice of an unauthorized transfer within 60 days of receipt by the account holder of the listing of an unauthorized transfer in the bank's statement.

21. Pursuant to 12 CFR § 205.6(5)(ii), the consumer may notify the financial institution of the unauthorized transfer in person, by telephone, or in writing.

22. Plaintiff notified BANA of the unauthorized transfers within 60 days of Plaintiff's receipt of BANA's transmittal of the periodic statement. Indeed, Plaintiff notified BANA of the unauthorized transfers within 60 days of the first unauthorized transfer.

23. BANA is strictly liable for all of the unauthorized transactions that are the subject of this action, and BANA was required to fully credit Plaintiff's account for those amounts debited, withdrawn, and/or transferred from Plaintiff's account for each and every unauthorized transaction.

24. BANA is liable for all unauthorized transfers under the EFTA because it held itself out to Plaintiff and the public as providing "zero liability" to its account holders for unauthorized transfers.

25. This cause of action is timely as it was commenced within one year of its accrual.

26. By reason of BANA's unauthorized payments, transfers, and/or debits of Plaintiff's account, BANA was required to credit Plaintiff's account in the amount of $7,550.00, plus interest from the date of each unauthorized transfer.

27. Plaintiff provided notification to BANA at least five times between June 12, 2020 and June 16, 2020 by phone regarding the unauthorized transactions, and BANA was required to

either credit Plaintiff's account or deny Plaintiff's claim, listing the specific ground for disclaimer, within 10 days of said notifications.

28. Plaintiff also provided written notification to BANA on August 21, 2020, regarding the unauthorized transactions, and BANA was required to either credit Plaintiff's account or deny Plaintiff's claim, listing the specific ground for disclaimer, within 10 business days of said notifications.

29. BANA failed to credit Plaintiff's account, failed to conduct a prompt investigation, and failed to report the results of its investigation to Plaintiff in violation of the EFTA and Regulation E.

30. Plaintiff has incurred damages in the amount of $7,550, plus interest, attorney's fees, and costs.

31. Plaintiff has retained undersigned counsel to represent her in this matter, is obligated to pay a reasonable fee for services rendered, and is entitled to recover same from BANA pursuant to 15 U.S.C. § 1693m(a)(3).

32. BANA is also liable for a statutory fine in an amount not less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A).

WHEREFORE, Plaintiff, LYNNETTE ENSIGN, demands that this Honorable Court enter judgment against Defendant, BANK OF AMERICA, N.A., for damages, interest, statutory fine, attorney's fees, costs, and such other and further relief as may be deemed just and proper.

## COUNT II
### Negligence

33. Plaintiff re-alleges and re-asserts the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

34. BANA had a duty to utilize reasonable security precautions prior to paying, debiting, and/or transferring funds from Plaintiff's checking account.

35. BANA breached its duty and was negligent in the following respects:

   (a) failing to properly monitor Plaintiff's account;

   (b) failing to recognize that the circumstances surrounding the transactions and the number and types of transactions were indicative of fraud;

   (c) failing to timely recognize the fraud;

   (d) failing to notify Plaintiff that transactions on her account had the indices of fraud;

   (e) failing to freeze Plaintiff's account after being notified of the unauthorized transactions and after Plaintiff requested that her account be frozen;

   (f) not blocking recurring charges and/or payments to the fraudulent recipients in a timely manner;

   (g) not crediting Plaintiff's account for the unauthorized transfers despite receiving timely notice; and

   (h) not conducting an investigation upon receiving notice of the unauthorized transactions.

36. Plaintiff has been damaged as a result of BANA's negligence in the amount of $7,550, plus interest.

WHEREFORE, Plaintiff, LYNNETTE ENSIGN, demands that this Honorable Court enter judgment against Defendant, BANK OF AMERICA, N.A., for damages, interest, costs, and such other and further relief as may be deemed just and proper.

By: /s/ Natalie F. Guerra-Valdes
NATALIE F. GUERRA-VALDES
Valdes Law Firm, P.A.
Florida Bar No.: 58737
NValdes@ValdesLawFirmPA.com
633 SE 3rd Avenue, Suite 301
Ft. Lauderdale, FL 33301
Telephone: (954) 764-7878
Facsimile: (954) 764-7272

# EXHIBIT "A"

## UNAUTHORIZED TRANSACTIONS

| Date | Description | Amount |
|---|---|---|
| 4/27/2020 | Cash App Ivana | $200 |
| 4/27/20 | Shipt | $57 |
| 4/27/20 | Shipt | $145 |
| 4/27/20 | Shipt | $14 |
| 4/27/20 | Uber Eats | $57 |
| 5/11/20 | Starbucks | $45 |
| 5/11/20 | BurgerFi | $25 |
| 5/11/20 | Lyft | $89 |
| 5/11/20 | Cash App Ivana | $100 |
| 5/12/20 | GubHubFrankiesPizzer | $36 |
| 5/12/20 | GubHubMariotheBaker | $48 |
| 5/12/20 | Cash App Ivana | $250 |
| 5/12/20 | Shipt | $10 |
| 5/13/20 | Shipt | $49 |
| 5/14/20 | GrubHubPopeyes | $24 |
| 5/18/20 | Lyft | $52 |
| 5/26/20 | Shipt | $14 |
| 5/26/20 | GrubHubCharhut | $15 |
| 5/26/20 | GrubHubChinacity | $28 |
| 5/26/20 | Cash App Ivana | $150 |

1

| 5/26/20 | Cash App Jeremy | $95 |
|---|---|---|
| 5/27/20 | Cash App Ivana | $20 |
| 5/27/20 | Cash App Jeremy | $35 |
| 5/27/20 | Cash App Jeremy | $90 |
| 5/27/20 | Cash App Jeremy | $25 |
| 5/28/20 | Cash App Jeremy | $300 |
| 5/29/20 | Cash App Jeremy | $250 |
| 5/29/20 | Cash App Ivana | $250 |
| 6/4/20 | Cash App Brittany | $180 |
| 6/4/20 | Cash App Jeremy | $300 |
| 6/8/20 | GrubHubWawa | $46 |
| 6/8/20 | Cash App Ivana | $410 |
| 6/8/20 | Cash App Brittany | $120 |
| 6/8/20 | Uber Trip | $76 |
| 6/8/20 | Uber Trip | $52 |
| 6/8/20 | Uber Trip | $10 |
| 6/8/20 | Cash App Brittany | $60 |
| 6/9/20 | Uber Trip | $60 |
| 6/9/20 | Cash App Lec Ribo | $600 |
| 6/9/20 | Cash App Brittany | $200 |
| 6/9/20 | Cash App Mayron | $130 |
| 6/9/20 | Cash App Max | $100 |
| 6/9/20 | Cash App Lec Ribo | $400 |

| 6/15/20 | Doordash Miami Grill | $51 |
| --- | --- | --- |
| 6/15/20 | GrubHubBurgerKing | $17 |
| 6/15/20 | GrubHubPopeyes | $29 |
| 6/15/20 | Cash App Lec Ribo | $600 |
| 6/15/20 | Cash App Brittany | $200 |